## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  12-22181-CIV-ALTONAGA/Simonton

**ANDREA CAPPELLO**, *et al.*,

      Plaintiffs,

vs.

**CARNIVAL CORPORATION**,

      Defendant.

_____/

## <u>ORDER</u>

**THIS CAUSE** is before the Court upon a review of Plaintiffs, Andrea Cappello ("Cappello") and Verusca Davila's ("Davila['s]") Motion to Remand Case and Request for Attorneys' Fees and Costs for Improper Removal ("Motion") [ECF No. 5], filed June 26, 2012. On May 14, 2012, Plaintiffs filed a Seaman's Complaint and Jury Demand ("Complaint") [ECF No. 1-2] in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida alleging six counts: breach of the warranty of seaworthiness (Count I); Jones Act negligence (Count II); failure to provide maintenance and cure (Count III); failure to provide prompt, proper and adequate maintenance and cure (Count IV); common law negligence (Count V); and loss of consortium (Count VI).  Defendant, Carnival Corporation ("Carnival") filed a Notice of Removal [ECF No. 1] on June 11, 2012, and Plaintiffs filed the present Motion. Carnival filed a Response to Motion to Remand . . . ("Response") [ECF No. 10], on July 18, 2012.

## I.  LEGAL STANDARD

Plaintiffs seek remand for lack of federal jurisdiction.  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1147(c).  "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  *Id.*

## II.  ANALYSIS

Plaintiffs contend there is no federal jurisdiction, and removal is defective, because: (1) the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201, *et seq.* ("Convention") does not apply; and (2) removal on the basis of admiralty jurisdiction alone would violate Plaintiffs' rights under 28 U.S.C. section 1333.  (*See* Mot. 1–2).  The Court addresses each of Plaintiffs' arguments in turn.

### A.        Whether the Convention applies

Carnival removed this action pursuant to 28 U.S.C. section 1441, *et seq.*, and 9 U.S.C. section 205.  Under 28 U.S.C. section 1441(c) ("section 1441"):

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1441(c).  Section 1331 confers federal question jurisdiction on the district courts.[1] Removal to compel arbitration under the Convention raises a federal question.  *See InterGen N.V. v. Grina*, 344 F.3d 134, 143 (1st Cir. 2003).  Carnival asserts the Court has federal question jurisdiction over this action under both the Convention and admiralty law.  (*See* Resp. 3–4).

---

[1]  Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and over diversity actions in which the matter in controversy exceeds $75,000, *see id.* § 1332.

Pursuant to the Convention, 9 U.S.C. section 205 ("section 205"),

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. . . .

9 U.S.C. § 205.   The parties dispute whether this provision of the Convention applies to Plaintiffs' claims.

Plaintiffs contend section 205 does not apply because the jurisdictional prerequisites of the Convention have not been met.  The jurisdictional requirements of the Convention are that:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Bautista v. Star Cruises*, 396 F.3d 1289, 1295 n.7 (11th Cir. 2005).  According to Plaintiffs, the first element is not met — there is no agreement in writing covered by the Convention.  (*See* Mot. 5).  The Convention states, "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention."   9 U.S.C. § 202.   Under section 2, "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, [or] transaction . . ., shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

Plaintiffs assert Carnival has not presented a signed arbitration agreement between the parties. (*See* Mot. 6). Carnival has instead produced an "Officer's Agreement" [ECF No. 1-1], which was signed and entered into by Cappello and Golden Falcon, a non-party to this action. (*See id.*). According to Plaintiffs, "[t]he instant lawsuit is brought solely against CARNIVAL for its negligence, the negligence of CARNIVAL's employees and the unseaworthiness of CARNIVAL's ship. The Complaint does not mention nor allege tortious conduct on behalf of Golden Falcon." (*Id.*). Plaintiffs contend that in order to compel arbitration, Carnival would have to produce an agreement signed by itself and Cappello. (*See id.*).

Carnival does not dispute that it is not a signatory to the Officer's Agreement between Cappello and Golden Falcon. It contends nevertheless that the requirement to arbitrate in the Officer's Agreement should be enforced against Cappello under the doctrine of equitable estoppel. (*See* Resp. 4).

"A rule of contract law is that one who is not a party to an agreement cannot enforce its terms against one who is a party . . . . The right of enforcement generally belongs to those who have purchased it by agreeing to be bound by the terms of the contract themselves." *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1167–68 (11th Cir. 2011) (internal citations omitted). There are, however, exceptions to this general rule, including the exception of equitable estoppel. *See id.* at 1168. The Eleventh Circuit in *Lawson* explained that many of that court's "decisions involving the question of whether a non-party can enforce an arbitration clause against a party have not made clear that the applicable state law provides the rule of decision for that question," citing a number of pre-2009 Eleventh Circuit decisions, some of which are cited by Carnival, including *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999). *Id.* at 1170–71.

The Eleventh Circuit in *MS Dealer*, without specifying the applicable choice of law,

stated that equitable estoppel may allow a non-signatory to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA") under two circumstances — (1) "when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory," 177 F.3d at 947 (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993)) (alterations in original); and (2) "'when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" *Id.* (quoting *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1432 (M.D. Ala. 1997)) (alterations in original).

As the *Lawson* court states, pre-2009 decisions, including *MS Dealer*, predate the Supreme Court's decision in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), which clarifies that state law governs the applicability of common-law exceptions to enforcement of arbitration agreements, and overrules or abrogates previous Eleventh Circuit decisions to the contrary. *See id.* at 1171. The court in *Lawson* proceeded to examine the applicability of equitable estoppel as set forth in Georgia law. *See id.*

Carnival provides no analysis as to whether equitable estoppel *under state law* mandates arbitration here, or what the applicable state law is. Carnival does, nevertheless, direct the Court's attention to the recent decision of *Escobal v. Celebration Cruise Operator, Inc.*, No. 11-14022 (11th Cir. July 20, 2012) [ECF No. 12-1], in which the Eleventh Circuit affirmed the district court's application of equitable estoppel as set forth in *MS Dealer* to require a party signatory to an agreement to arbitrate his claims against a non-signatory under the Convention. The court in *Escobal* did note that the Supreme Court in *Carlisle* had abrogated *MS Dealer* "on other grounds," and clarified it "need not decide whether federal substantive law or state law

controls this issue in this case; *Carlisle* involved the [Federal Arbitration Act] rather than the Convention." No. 11-14022, slip op. at 3 & n.3 (citation omitted). The court stated, moreover, that the result under Florida law would be the same. *See id.* Therefore, in light of *Escobal* the Court proceeds to apply the test in *MS Dealer* to decide whether Carnival may enforce the arbitration clause in the Officer's Agreement against Cappello, although the Court finds some difficulty with this approach in light of *Carlisle*.

Under *MS Dealer*, for equitable estoppel to compel arbitration here, Carnival must show how either (1) Cappello relies on the terms of the Officer's Agreement in asserting his claims against Carnival, or (2) Cappello alleges "substantially interdependent and concerted misconduct" by both Carnival and Golden Falcon. *MS Dealer*, 177 F.3d at 947. Carnival relies on the first prong of this test. According to Carnival, "the present dispute is controlled by — not just intertwined with — the 'Officer's Agreement' because all of Plaintiff's claims invoke its terms." (Resp. 5). Carnival bases this argument entirely on the language of the arbitration clause itself, which provides, "[a]ny and all disputes arising out of or in connection with [the] Agreement, including any question regarding its existence, validity, or termination, or *Officer's service on the vessel*, shall be referred to and fully resolved by arbitration." (*Id.* (quoting Officer's Agreement ¶ 29)) (emphasis added). According to Carnival, "Plaintiffs' claims against Carnival are based on Plaintiff's service on Carnival's vessel and the underlying contractual obligation between Golden Falcon and Plaintiff." (Resp. 6).

Carnival's argument fails to persuade, as it conflates two distinct concepts — the scope of the arbitration clause, and the scope of the agreement containing the arbitration clause. The arbitration provision itself is indeed somewhat broadly worded, by referring to "any question regarding . . . [Cappello's] service on the vessel." (Officer's Agreement ¶ 29). However, as

stated above, it is undisputed that the agreement itself is not between the parties to this dispute. Thus, the arbitration clause is not a contract between Cappello and Carnival, and it is not a matter of a straightforward reading of that clause's language to determine whether an issue is arbitrable.

Carnival may only compel arbitration by means of the equitable doctrine of estoppel, which requires more than merely pointing to a broadly worded arbitration provision. In determining whether the doctrine applies, the Court must examine the scope of the agreement containing the arbitration provision in light of the claims asserted. As defined by Eleventh Circuit precedent, estoppel requires an examination of the actual "terms of the written agreement" in relation to the claims in the Complaint. *MS Dealer*, 177 F.3d at 947. The court in *MS Dealer* stated that estoppel is appropriate where "each of a signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement." *Id.* (quoting *Sunkist*, 10 F.3d at 758); *see also Sourcing Unlimited, Inc. v. Asimco International, Inc.*, 526 F.3d 38, 48 (1st Cir. 2008) (holding party signatory to agreement was equitably estopped from avoiding arbitration where "[a]ll of [its] claims against [defendant] ultimately derive from benefits it alleges are due it under the partnership Agreement").

Apart from the reference to the arbitration clause and a few cursory statements, Carnival makes no showing of how Cappello's claims implicate the terms of the Officer's Agreement. Cappello's claims arise out of an incident on October 20, 2010, when "acid and/or other type [sic] caustic solution erupted/exploded into Plaintiff's eyes while mixing chemicals for a piece of machinery used to purify water aboard the Vessel," resulting in Cappello's blindness. (Compl. ¶ 14). The alleged behavior by Carnival that forms the basis of Cappello's claims includes failure to train Cappello in mixing caustic solutions, failure to provide instructions, failure to provide

safety equipment and an eyewash station, failure to implement safe methods of operation, failure to provide competent shipboard medical staff, failure to provide proper medical equipment, and failure to provide competent shore-side personnel.  (*See id.* ¶ 17).  Counts I, II, and V are premised on such alleged omissions, with some little variation among the three claims.  None of these counts mentions the Officer's Agreement, and Carnival has made no particularized showing of why that agreement is relevant to these claims.

Counts III and IV allege maritime law "failure to provide maintenance and cure" and Jones Act "failure to provide prompt, proper and adequate maintenance and cure," respectively. Count III alleges that Cappello is due maintenance and cure under general maritime law, and that in refusing to fulfill maintenance payments, Carnival cited sick wage provisions in the Officer's Agreement, even though "[t]he Officer's Agreement is clear that sick wages which [sic] are separate and apart from maintenance."  (*Id.* ¶ 25).  Count IV alleges failure to provide maintenance and cure under the Jones Act, and does not repeat the allegations regarding the Officer's Agreement.  (*See id.* ¶¶ 29–31).  It is evident that neither claim presumes the existence of the Officer's Agreement — neither claim alleges that Cappello is due maintenance and cure under the terms of that agreement.  Rather, the Complaint merely mentions the fact of the agreement as Carnival's purported reason for not providing the maintenance and cure allegedly due.

Cappello does allege that "[t]he Officer's Agreement also provides maintenance is to be provided beyond a year.  As such, there is no basis for which Defendant could prematurely terminate insurance."  (*Id.* ¶ 25).  In context, however, given that Cappello alleges legal bases for these claims independent of the Agreement, this statement appears to be an argument for why Carnival's reason for denying maintenance and cure is invalid on its own terms.  In any event,

the statement standing alone hardly requires Cappello in equity to arbitrate Counts III and IV, or any other portion of the Complaint.

To the extent Carnival contends Cappello is equitably estopped from avoiding arbitration because the October 2010 incident arose while he was employed, and Cappello was employed by means of the Officer's Agreement, the Eleventh Circuit in *Lawson* foreclosed this line of reasoning.  In that case, the court explained the distinction between an agreement that is factually significant, and one that serves as the basis for the plaintiff's claims.  *See* 648 F.3d at 1172–73. Although the *Lawson* court applied Georgia law, the point is illustrative of the issue here.  The court found that while a plaintiff suing to enforce the terms of an unsigned promissory note would be compelled to arbitrate per a clause in that note, the plaintiffs in *Lawson* were not bound to arbitrate by the terms of a loan agreement that was not the basis of their claims.  *See id.* (citing *LaSonde v. CitiFinancial Mortg. Co.*, 273 Ga. App. 113 (Ga. 2005)).  This was true even though the *Lawson* complaint "refer[red] to the loan or indebtedness twelve times — but only because it [was] factually significant."  *Id.* at 1173.  The Lawsons' claims arose out of a separate agreement to refund premiums due the Lawsons because they paid a loan early — the factual significance of the loan agreement itself was merely that there was a loan to begin with.  *See id.*

Similarly, here, the Officer's Agreement is factually significant in that it was the instrument by which Cappello was employed on Carnival's ship.  It is also factually significant in that Carnival allegedly invoked its terms to avoid fulfilling an independent obligation. Carnival has not, however, shown why the terms of the Officer's Agreement form the basis of Cappello's claims.  Accordingly, the Court declines to find equitable estoppel appropriate here. The Court finds the Convention does not apply to Plaintiffs' claims, and Cappello is not required to arbitrate.

Carnival's arguments with respect to Plaintiff Davila are that her claim for loss of consortium is subject to arbitration as a derivative claim of Cappello's. (*See* Resp. 7). Because arbitration of Cappello's claims is not appropriate, by Carnival's reasoning Davila's are not either.

### B.    Whether removal is warranted under admiralty jurisdiction

The Notice of Removal states in passing that the Court has jurisdiction over this action under 28 U.S.C. § 1333. (*See* Notice of Removal 4). Plaintiffs contend it is "well established that maritime cases are not removable under the savings to suitors clause of 28 U.S.C. § 1333 where there exists no other basis of federal jurisdiction." (Mot. 4); 28 U.S.C. § 1333 ("The district courts shall have original jurisdiction . . . of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled. . . ."). Carnival makes no response to this argument, which the Court deems admitted. The Court finds no basis for federal jurisdiction under either admiralty law or the Convention. Carnival has alleged no other basis for federal jurisdiction over this action.

### C.    Whether Plaintiff Davila fails to state a claim

Carnival further contends that in the alternative, Davila's claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6). (*See* Resp. 7–8). However, because the Court lacks subject matter jurisdiction over this action, it must remand. It is therefore inappropriate for the Court to rule on the substantive merits of Davila's claim.

### D.    Attorney's fees and costs

Plaintiffs also seek attorney's fees and costs for improper removal under 28 U.S.C. § 1447(c). (*See* Mot. 12–13). Carnival declined to address the appropriateness of fees and costs in its Response, instead requesting leave to address this issue separately should the Court find

Case No. 12-22181-CIV-ALTONAGA/Simonton

remand appropriate.  (*See* Resp. 1 n.1).  The Court grants Carnival's request.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion to Remand Case and Request for Attorneys' Fees and Costs for Improper Removal **[ECF No. 5]** is **GRANTED in part**.  This case is **REMANDED** to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.  The Clerk of Court is instructed to **CLOSE** this case.  Carnival shall submit its response to the portion of the Motion seeking fees and costs no later than **August 16, 2012**.  Plaintiffs shall file a reply thereto no later than **August 22, 2012**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of August, 2012.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record